D3LMROSS                        Sentence

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        11 Cr. 674 (NRB)

5   BRUCE ROSENBLUM,

6                   Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         March 21, 2013
9                                        4:15 p.m.

10
    Before:
11
                    HON. NAOMI REICE BUCHWALD,
12
                                         District Judge
13

14                       APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    JONATHAN COHEN
17       Assistant United States Attorney

18  BRAFMAN & ASSOCIATES
         Attorneys for Defendant
19  BY:  BENJAMIN BRAFMAN
         JACOB KAPLAN
20

21

22

23

24

25
```

1     (Case called)

2          MR. COHEN:  Jon Cohen on behalf of the government.

3     Good afternoon, your Honor.

4          MR. BRAFMAN:  Good afternoon, your Honor, Benjamin

5     Brafman and Jacob Kaplan for Mr. Rosenblum, who is present for

6     sentencing.

7          THE COURT:  Let me begin, as always, by confirming

8     that I have received everything I should have in connection

9     with the sentence.

10         Excuse me one minute.  I left something on the desk.

11         (Pause)

12         THE COURT:  In connection with the sentencing I have

13    the report of the probation department with a cover memo dated

14    March 13 of this year and I have sentencing memorandum

15    submitted on behalf of Mr. Rosenblum and the appendix to that

16    sentencing memorandum.  Those are all of the documents that I

17    have in connection with the sentence, is that correct?

18         MR. BRAFMAN:  Your Honor, I agree that's correct.

19    With respect to Mr. Rosenblum, there was a covering letter from

20    me to your Honor that came with the courtesy copy to the Court.

21    I have an extra copy.

22         THE COURT:  I don't recall seeing that.  That

23    refreshes me that there is right in front of me another

24    document that I have, and that is a letter from Mr. Rooney,

25    Terrence Rooney, who is Mr. Rosenblum's therapist at St. Mark's

1   Place.

2          MR. BRAFMAN:  That's correct.  Our letter references

3   the need to get either a court order or direction from the

4   Court, but we have solved the problem.  If I can have my copy

5   back.  I want to make sure the government has a copy as well,

6   but I believe it was served on both your Honor and the

7   government at the same time.

8          THE COURT:  I should say that I spoke to a senior

9   person at probation.  I don't now remember exactly who I spoke

10  to, who said it was contrary to the practice of the probation

11  department to have therapists who they had contracted with come

12  to court and testify.

13         MR. BRAFMAN:  They opted for the letter.

14         THE COURT:  Right.

15         MR. BRAFMAN:  We sought guidance from your Honor.  We

16  didn't want to do anything that was inappropriate.  We thought

17  the information was relevant on the issue of sentencing.

18         THE COURT:  Let me just confirm, Mr. Brafman, that

19  you've received a copy of the probation officer's report?

20         MR. BRAFMAN:  Yes, your Honor.

21         THE COURT:  Have you had a chance to review it with

22  Mr. Rosenblum?

23         MR. BRAFMAN:  Yes, your Honor.

24         THE COURT:  Do you have any objections to it?

25         MR. BRAFMAN:  There was some previous objections

1    filed.  They have been accepted and they were ministerial in

2    nature and they have all been corrected.

3              THE COURT:  Mr. Cohen, did you receive a copy of the

4    report?

5              MR. COHEN:  Yes, your Honor.

6              THE COURT:  Do you have any objections?

7              MR. COHEN:  No objections.

8              THE COURT:  It would be hard not to get the thrust of

9    the submission on behalf of Mr. Rosenblum from the 48-page

10   letter and the stack of exhibits.

11             If it would be all right, I would like to begin with a

12   question for Mr. Cohen.

13             MR. BRAFMAN:  Sure.

14             THE COURT:  This case, both with respect to

15   Mr. Rosenblum and his codefendant, Mr. Nicosia, sort of have a

16   quality of just springing up in very little context.  And I

17   understand how the government came to learn about Mr. Rosenblum

18   through the cooperative efforts of Mr. Nicosia.  But what is

19   very much missing from my perspective in trying to figure out

20   what an appropriate sentence here is is learning something more

21   about Mr. Rosenblum's criminal activities, which I assume he

22   needed to tell you about in order to get the benefit of safety

23   valve.

24             MR. COHEN:  May I have a moment, your Honor?

25             THE COURT:  Sure.

D3LMROSS                         Sentence

1          MR. COHEN:  Judge, so there is the conduct that the

2     government knew about prior to safety valve proffers and there

3     is conduct that we learned in questioning of Mr. Rosenblum.

4          Mr. Rosenblum did sell drugs to Mr. Nicosia.  You'll

5     see that reflected in the plea agreement.  The Ketamine that's

6     reflected there, large quantities, and the methcathinone, the

7     analogue of 4-MEC that's reflected there, those were both drugs

8     that he was selling to Mr. Nicosia.  The cocaine comes in

9     through sessions with Mr. Rosenblum.  Mr. Rosenblum initially

10    wanted to cooperate with the government and was very

11    forthcoming and engaged in multiple sessions with the

12    government, a total of four sessions, and the government

13    declined to extend a cooperation agreement to Mr. Rosenblum.

14         THE COURT:  Mr. Rosenblum or Mr. Nicosia?

15         MR. COHEN:  Mr. Rosenblum.

16         THE COURT:  So you declined for both of them,

17    actually?

18         MR. COHEN:  Yes.  But in Mr. Rosenblum's case it was

19    not based on the government's concerns about credibility.  It

20    was based on other reasons.  So some of the information that's

21    come to light from the government's perspective is from the

22    sessions and some of it is from the drugs.  For instance, the

23    Ketamine, the methcathinone, those are substances that the DEA

24    took custody of and tested.  And the cocaine is coming in based

25    on representations by Mr. Rosenblum in order for him to qualify

D3LMROSS                          Sentence

1    for safety valve relief.

2              THE COURT:  Let me try it again.  What is the street

3    value of these drugs?  How big an operation is this?  How long

4    was he engaged in it?

5              MR. COHEN:  Can I have a moment, your Honor?

6              THE COURT:  Yes.

7              MR. COHEN:  Judge, for the drugs that Mr. Rosenblum

8    was caught with, approximately $50,000, that is about half of

9    the Ketamine and about half of the methcathinone.  Because

10   equal quantities were on his person and had previously been

11   provided to Mr. Nicosia approximately equal quantities.  So he

12   was seized with about half of the Ketamine and about half of

13   the methcathinone that's listed in the plea agreement.  My

14   understanding from the defense is that the street value of that

15   was approximately $50,000.  The cocaine can range, a gram could

16   be $40, $50, gram level quantities, you know, and usually even

17   more than that.  And then wholesale quantities, kilo of cocaine

18   could be anywhere from $30,000 to $40,000, depending on the

19   situation, and I believe the quantities of cocaine were

20   significantly less than a kilo, 226 grams, about a quarter

21   kilo, your Honor.

22             THE COURT:  Remind me what you said about, the cocaine

23   comes into the picture because --

24             MR. COHEN:  Because the government asked Mr. Rosenblum

25   to be candid about his history of drug dealing.  And aside from

D3LMROSS                        Sentence

1       the classes of drugs that he was arrested with, he also dealt

2       cocaine in the past and told us of the quantities of cocaine

3       that he had dealt.

4                   THE COURT:  And is there any information about how

5       long Mr. Rosenblum had been involved in drug dealing?

6                   MR. COHEN:  From memory, your Honor, it was quite a

7       few years.

8                   THE COURT:  Mr. Brafman, let me give you the floor.

9                   MR. BRAFMAN:  Thank you.

10                  Your Honor, I want to start where I did not think I

11      would start from, but since the Court asked specific questions,

12      let me at least begin there.

13                  I had not intended to have my remarks focus at all on

14      the facts because I can see that the facts are bad.  This is a

15      drug case.  It's not a good drug case.  The defendant was a

16      drug addict.  And his dual addiction to gambling and drug

17      addiction fueled his involvement in criminal activity.  We have

18      been candid with the Court about that.  He has been candid with

19      probation.

20                  And to his credit, some of what the government learned

21      about Mr. Rosenblum came from Mr. Rosenblum when the government

22      didn't know anything about it, and I think that's all part of

23      the process of trying to make amends and trying to do what's

24      right and trying to help yourself when you suddenly realize

25      that you need to turn your life around.  So I concede that the

1    facts are bad.

2          The question is, what do we do with that and where do

3    we go with that?  I want to respectfully note for the record,

4    since the Court mentioned Mr. Nicosia, your Honor will recall

5    that the Court imposed an 18-month sentence in the case of

6    Mr. Nicosia.  And I just want to point out the distinction,

7    which I think is a huge distinction.  Mr. Nicosia's case, the

8    Department of Probation recommended 57 months.  The Court

9    imposed 18 months for family circumstances and a variety of

10   reasons.  I'm not quarreling with the sentence, but I do want

11   the Court to recognize that what I saw in the defendant's

12   probation report I very rarely have seen, especially in a

13   report prepared by a seasoned veteran where the probation

14   officer concludes that the probation is very impressed with the

15   defendant's postarrest efforts towards rehabilitation and

16   believe that his enthusiasm is sincere.  That's a statement to

17   your Honor that I think is made by an objective, independent

18   officer of the Court or at least independent arm of the Court.

19   And I think that's a powerful statement, that with Mr. Nicosia,

20   who is the one who set up Mr. Rosenblum, for using street

21   language, if I could --

22          THE COURT:  Only in his arrest, not in his criminal

23   activity.

24          MR. BRAFMAN:  I understand that.  In that case it was

25   Mr. Nicosia who assisted in the arrest of Mr. Rosenblum, and

D3LMROSS                          Sentence

 1   the Department of Probation recognized that in his case a

 2   recommendation of 57 months was appropriate.

 3          THE COURT:  Let me just tell you candidly, I tried to

 4   reach the probation officer earlier because, for the life of

 5   me, I cannot figure out why the probation officer made the

 6   recommendation with respect to Mr. Nicosia and made the

 7   recommendation with respect to Mr. Rosenblum.  And, honestly,

 8   to be really candid, I don't think they are that different.  I

 9   think there are enormous parallels between these two people.

10   And I'm sorry I couldn't reach her.  I don't know what her

11   thinking is.  But, as I say, I don't understand the difference.

12          MR. BRAFMAN:  I don't want to speak out of turn and

13   I'll let the government address this.  I think if you were to

14   inquire, I think the government would concede that they are

15   very different people, Mr. Nicosia and Mr. Rosenblum, and that

16   Mr. Nicosia, who had an opportunity to cooperate and did

17   cooperate, at least with respect to Mr. Rosenblum, did not earn

18   a 5K agreement because at some point the government was

19   disappointed in his credibility, if you will.

20          With respect to Mr. Rosenblum, who came in on four

21   separate occasions, my understanding, proffered honestly, not

22   just to obtain safety valve, but proffered honestly.  The

23   cooperation agreement was not offered because he did not have

24   any useful information to provide.  There was never a

25   conclusion that he wasn't being honest.  I think that's a huge

1   difference.

2         THE COURT:  Let's go through some of the similarities.

3   They are roughly the same age, they both got involved in

4   criminal activity as a result of both drug and gambling

5   addictions.  They both started their own businesses, which at

6   some point came to an end.  They both have failed marriages

7   under sort of dramatic circumstances.  Mr. Nicosia, as soon as

8   he was arrested, turned his life around and not only turned his

9   own life around, but turned around the life of his four kids.

10        You know, in the case of Mr. Rosenblum, I recognize he

11   has family, but not family he is responsible for in the same

12   way that Mr. Nicosia was responsible for his kids.  And I think

13   the same arguments about post hope rehabilitation apply to

14   Mr. Nicosia.  You may be aware, you may not be, I don't know,

15   that his wife was so debilitated, shall we say, by her drug

16   addiction that he was given custody of his children while he

17   was under federal indictment for a narcotics case.  That is,

18   I'm thinking, in both of our experiences, pretty unusual.

19        MR. BRAFMAN:  I agree.

20        THE COURT:  He took kids that were failing, he took

21   care of them and got them to be good students.  And so,

22   frankly, I don't really understand why Ms. Tyler saw these two

23   people so dramatically differently.  That doesn't mean that I

24   think either of them should have gotten the guidelines

25   sentence.  And that's why I was trying to ask Mr. Cohen, who

D3LMROSS                    Sentence

1    didn't submit a letter with respect to Mr. Rosenblum but had

2    with respect to Mr. Nicosia, to give me some greater sense of

3    the background.  I understand why you don't want to discuss the

4    criminal activity of your client.  That's fine.  He has pled to

5    it.

6          But the question is, as I have to decide what the

7    appropriate sentence is, I also have to really get a sense of

8    the extent of his criminal activity.  And this case is a little

9    bit unusual because, even going back to the complaint, you

10   know, to try to learn something more about it, okay, the

11   government has a confidential informant.  They arrest

12   Mr. Nicosia, they find some drugs in his house.  He gives up

13   Mr. Rosenblum.  They find some drugs on his person and some in

14   his house.  It's like a presentation in a box and most of the

15   time cases don't just arrive in boxes, and that's really the

16   reason that I'm trying to learn a little bit more.

17         MR. BRAFMAN:  Your Honor, if I may, and, obviously,

18   your Honor's concern concerns me because it is my hope to still

19   be able to persuade you that a sentence of incarceration is not

20   appropriate in this case, even though in your Honor's mind

21   perhaps starting this dialogue you see the defendant is very

22   similarly situated.  I think there are a number of

23   distinctions.  It's my understanding, your Honor, that the

24   record in this case of extraordinary postrehabilitation efforts

25   is not disputed by anybody, and I think part of the reason

D3LMROSS                        Sentence

1    there is no response in writing from the government is I think

2    that they don't dispute the fact that in the last 18 months

3    this defendant has done everything possible --

4           THE COURT:  Mr. Nicosia did, too.  He did it not just

5    for himself.  He didn't just clean up his act.  He behaved as a

6    truly responsible parent and helped his four kids get back on

7    track.

8           MR. BRAFMAN:  To his credit I think that's all

9    obviously very good.  But I think in this case what we have

10   added to the equation, if you will, is the question of whether

11   or not a prison sentence under these circumstances, as to this

12   defendant, who is currently engaged in the extraordinary

13   rehabilitative efforts, would do good or more harm than good.

14   And I respectfully submit that based on the facts in this case,

15   a sentence of probation with as a condition of probation that

16   the defendant continue in therapy is appropriate for a number

17   of reasons that I'd like to address.

18          First and foremost, I think the literature is clear

19   that a sentence of probation is punishment, but, more

20   importantly, it keeps the defendant on a very short leash

21   before this Court.  And to the extent that the trust your Honor

22   will put in him is misplaced and that he doesn't continue in

23   therapy as required or does anything wrong, you always have the

24   opportunity to sentence him within the next several years, and

25   I don't think that will ever happen.

D3LMROSS                          Sentence

1            But what I do have and, to be honest with you, Judge,

2    I did not ask the people who are in this courtroom to come.  To

3    the contrary, when it was suggested that all of the people

4    involved in Gamblers Anonymous, in the room he goes to several

5    times a week and times several times a day, wanted to come, I

6    was trying to discourage it.  And, yet, after the fact, I think

7    I was wrong.  And I think the letters that we have from many of

8    these people are painfully eloquent as to what we are

9    requesting, and it's what they are requesting.  And I know your

10   Honor has read everything.

11           I just want to read a very brief portion of one

12   from -- I am going to preserve the anonymity for the public

13   record of these men and women, even though many of them have

14   signed their full name.  Exhibit 17, which is a letter from

15   Mike, asks your Honor for probation, and you say why.  And I'm

16   quoting:  If he were to attend GA meetings for the rest of his

17   life telling his history to new members, that would be a

18   positive thing for his recovery and others as well.

19           Even if your Honor, and I'm stopping reading now, even

20   if your Honor were to feel that he doesn't deserve it himself,

21   the fact is that in the past 18 months, Bruce Rosenblum has

22   begun to have a dramatic positive effect on a number of people

23   who now look to him for guidance as a new recovering addict.

24   And some of the parts of these letters that are extraordinary,

25   your Honor, these are written by people who have been in

D3LMROSS                           Sentence

1    Gamblers Anonymous, some of them for 30, 40, 45 years.  This is

2    a lifetime of recovery, a lifetime of addiction.  And my hope

3    would be that not be any interruption.

4         I think perhaps one of the most eloquent pleas comes

5    from Exhibit 25, which is written by an individual named Larry.

6    And at the end, asking your Honor to keep him in the program,

7    he closes his letter with the following sentence, the last line

8    of Exhibit 25:  Please leave him with us and trust we will

9    watch him closer than any prison will.

10        So the question I have, and I think what we have done

11   in the submission, we have cited to every case that we could

12   find in this jurisdiction and others where courts in this

13   courthouse and across the bridge and in other jurisdictions

14   have concluded that postoffense rehabilitation is a powerful

15   argument.

16        THE COURT:  We don't disagree about that.

17        MR. BRAFMAN:  Judge, several years ago I was on a

18   sentencing panel with some of your colleagues from other courts

19   and I asked the question I've always wanted to ask of judges.

20   If I'm before a judge who I know has read everything, the

21   chances are fairly good that he or she has probably made up

22   their mind when they come on the bench.  Should I go through

23   the exercise of having this impassioned, and they said yes, and

24   you have to do it for a couple of reasons.  One, because you're

25   an advocate and it's your ethical responsibility.  Two, in the

1   case of someone like Bruce Rosenblum, who I think has

2   extraordinary redeeming qualities, it may help the Court, it

3   may move the Court.  And even if it doesn't, he deserves the

4   public record, not just the bad stuff, but the good stuff and

5   in this case what I think the extraordinary.  I am not going to

6   belabor these issues.

7          THE COURT:  I don't think I have ever cut someone off

8   at sentencing.

9          MR. BRAFMAN:  You have not and I'm not suggesting you

10  do.  It's clear to me that I'm climbing a steep hill.

11         THE COURT:  You're climbing the hill.  I'll be very

12  candid with you.  I gave his codefendant 18 months.  I took a

13  father out of his house, I put him in jail.  I took him away

14  from his kids.  I left his kids with his 63-year-old, if I

15  remember, 18 months away from retirement by putting his kids

16  into his mother's house.  Her father, who was widowed, could

17  not come and live with them.  And there is something, and I

18  think you'd agree, at least in the abstract, to balance within

19  a case and proportionality within a case.

20         Now, perhaps it would have been better if everyone got

21  sentenced on the same day, and I could have read both sets of

22  sentencing submissions.  But, generally, when the sentence

23  actually occurs, it tends to not be something that I fully

24  control.  You're asking for pure probation and you made an

25  argument in your brief which I just don't agree with, that they

D3LMROSS                          Sentence

1   are dramatically different.  I think they are incredibly

2   similar.  I'm being very honest with you.  That's where I'm

3   coming from.

4            MR. BRAFMAN:  I appreciate the Court's honesty.  I'm

5   not pleased by the honesty, but I appreciate the honesty.

6            THE COURT:  Better off knowing what I'm thinking.

7            MR. BRAFMAN:  Judge, I'm open to having this

8   discussion.  I read the language in Jones where the Court is

9   required to look at each individual in the unique human

10  complexity.  And I think that despite the fact that you might

11  have a right to conclude in the abstract, perhaps, that they

12  are very similar, I don't think they are.  And I think there is

13  a distinction within a difference and I think Bruce Rosenblum,

14  in his unique position right now, in the midst of extraordinary

15  therapy, has a shot at being a productive citizen.  And I think

16  he has a shot at continuing in therapy.

17           And you, your Honor, always have the right to change

18  your mind if he doesn't fulfill my expectations and his

19  expectations because probation does keep the defendant before

20  the Court, unlike Mr. Nicosia, who I think was remanded prior

21  to sentence, required to surrender.  Mr. Rosenblum was not.

22  Unlike Mr. Nicosia, who was not credible with the government,

23  at least in full, Mr. Rosenblum was.

24           So to the extent that they are not perfectly exactly

25  alike, I don't think the Court is bound to give Mr. Rosenblum

D3LMROSS                         Sentence

the same sentence that was imposed on Mr. Nicosia with a

sentence that's similar, and I don't think there is anything

inappropriate or illegal or an abuse of discretion to conclude

that this defendant has demonstrated to the Court -- put the

criminal conduct over here -- has demonstrated to the Court

with compelling, uncontroverted evidence that he has done an

extraordinary job at rehabilitating himself, and in the opinion

of experts, he is on the road to a full recovery.  You

interrupt that recovery, whether it's 18 months or a year and a

day or six months, and you get no therapy, you get no

treatment, and the worst thing for a recovering addict is to be

placed in the company of bad influences.  That's the first

mantra at any 12-step recovery program.  Stay away from people

who are bad influences.  The statistics that I have recently

read is that 60 percent of the people in federal custody are

there because of some involvement with narcotics that many

people even in jail continue to be involved in narcotics.

        Right now we know where he is.  He is home.  He is

with his family.  He is in front of the courtroom.  They have a

family unit that is taking care of him.  He is taking care of

them.  He is working full time for the first time in a long

time as an employee earning his own living, running a very,

very honest existence, a clean existence.  I just don't want to

break that.  And I certainly don't want to break it because the

Court feels that you must sentence him to the same sentence

D3LMROSS                          Sentence

1    that Mr. Nicosia received.  I think there are differences and I

2    think he is worth taking a gamble on.

3           And I want to say something else, Judge.  I'm not

4    Mr. Nicosia's lawyer and I'm not trying to either defend or

5    attack the sentence that the Court gave to Mr. Nicosia.  But if

6    the Court had imposed a sentence of probation in that case I

7    think I would have a very easy argument today on the issue of

8    sentence parity.

9           So rather than me having to be burdened, if you will,

10   by a sentence that I had really had nothing to do with and

11   could not help convince the Court to not impose, I'm now in a

12   position where I have to essentially defend the sentence that

13   was imposed in the case of Mr. Nicosia, and I see them as very

14   different people.

15          And I see that from the cases we have all been

16   reading, since Booker and Gall and the Supreme Court and when

17   we are arguing for a 3553 variance, the language that we get is

18   punishment should fit the offender, not merely the crime.  And

19   in this case I have an offender who has worked diligently,

20   exceptionally well.

21          I have 70 people in the courtroom who are begging you

22   to let him continue in recovery.  That's very unusual.  I have

23   been in this building for more than 30 years.  I usually have

24   the family and maybe some friends.  These people were not asked

25   by Bruce to come and they certainly weren't encouraged by me to

come.  This is part of the process.  We help you.  We take care
of you.  We try and convince a Court that you are worth the
risk of giving some extraordinary leniency to.

          I just want to read two quotes from cases that I
believe your Honor certainly recognizes.  They are in our
submission and they are from judges who I know this Court has
great respect for.

          One was a quote from Judge Sweet in the Maier case
where he gave a sentence of probation to a woman whose
guidelines were 51 to 63 months.  The government appealed and
the Second Circuit went back and said, we are going to affirm
the sentence by Judge Sweet.  This is the quote from the Court
which appears at page 41 of our submission.  The district court
conscientiously examined all of the pertinent circumstances,
including the nature of the defendant's addiction, the
characteristics of the program she has entered, the progress
she is making, the objective indications of her determination
to rehabilitate herself, and her therapist's assessment of her
progress toward rehabilitation, and the hazards of interrupting
the progress.

          I think, Judge, what we are supposed to do is impose a
sentence that's sufficient but not greater than necessary to
promote respect for the law.  I think in this case, as to this
defendant, if your Honor was to conclude, as I'm begging you to
conclude, that this defendant's therapy is quite remarkable and

D3LMROSS                          Sentence

1   I am going to err on the side of caution and allow him to

2   continue in that therapy so that we hopefully don't interrupt

3   therapy that's working, I think that's a good sentence.  I

4   don't think it's a sentence that imposes anyone to ridicule or

5   criticism and it certainly doesn't promote disrespect for the

6   Court.  I don't think anybody in Mr. Rosenblum's position would

7   consider a sentence after 18 months of rehabilitative efforts

8   where the Court said, you know, I am going to take a chance on

9   you and I am going to let you continue in your rehabilitation

10   and I am going to accept this argument.

11          What I would like to read to you is the quote from

12   Judge Gleason in the Zimmerman case.  Because if I wrote this

13   myself in this case, I think this is what I would be writing to

14   your Honor if I had the wisdom and eloquence of Judge Gleason.

15   It's at page 43.  In my view, even taking into account the

16   seriousness of the defendant's offense, imposing a more onerous

17   form of punishment, that is, a period of years or even months

18   in prison, would pose an undue risk of wiping all of the

19   defendant's hard work away, disserving not only him and the

20   family, but the community as well.  A sentence of supervised

21   release will allow the defendant to continue the positive path

22   he is on.  It strikes me as counterproductive to remove the

23   defendant from his current circumstances and delaying his

24   further progress while he sits in prison.

25          Let me continue below, skipping a few lines:  The

D3LMROSS                        Sentence

1    defendant is not the same person today as when he sold crack.

2    He would not likely be the same person after a lengthy term of

3    imprisonment as he is today.  He could easily lose the positive

4    attitude he currently has and fall back on old bad habits.  I

5    think that's the case.

6              THE COURT:  Are you really telling me that

7    Mr. Rosenblum's family, now that it is 100 percent clear what

8    he has been doing for the last 20 years of his life, whatever

9    he hid from them, whatever they chose not to see, that they

10   would ever let him slip back into that habit.  The fact is, he

11   does have a lot more support out there than a lot of people

12   that come before me for sentencing.

13             MR. BRAFMAN:  The support doesn't work by itself

14   without the therapy and the program.  And interrupting the

15   program for six months or a year and a day or 18 months, he has

16   to start from the beginning if he doesn't relapse while he is

17   there.

18             THE COURT:  He can't get drugs and he can't gamble.

19             MR. BRAFMAN:  Your Honor, most respectfully, I have

20   lectured on the problem in the Bureau of Prisons.  The Bureau

21   of Prisons, one of the biggest problems is use of drugs in

22   their facility and use of gambling to create all sorts of

23   problems.  They deal with it every day.  The problem we have

24   is, there is no supervision for this -- the only thing you

25   can't do in the prison for the most part is leave.  Other than

1   that, it's really up to a creative juices of a prison

2   surrounded by other prisoners who are going to teach you how to

3   work within the institution.  The case that was in this

4   courthouse, Michael Douglas' son, Cameron Douglas, represented

5   by a whole team of very good lawyers, he has been remanded over

6   and over again for getting drugs while he's in jail.  And his

7   24-month sentence ended up as ten years and he is serving it in

8   maximum security in segregation.

9           Your Honor, I'm asking you, Judge, most respectfully,

10  I understand exactly what you are saying.  And I'm not looking

11  to fight with you.  Someone asked me how I spent my day.  I

12  said, well, today, I'm going to be begging.  That's how I am

13  going to spend my day.  I want to help him.  I want to save

14  him.  I think he's worth saving.  I think he can be saved.

15          And I think the only thing, in my opinion, that maybe

16  is stopping you from being more receptive is the fact that

17  you've already imposed the sentence in the Nicosia case.  You

18  thought it was the appropriate sentence in that case and I

19  don't think you are bound to give the same sentence to this

20  defendant because judges, for a variety of reasons, and I think

21  you can look at the cases we cited, when there is an issue of

22  sentence disparity, the courts can justify it and in this case

23  I think you can justify it.  You don't need to justify it.  I

24  think you can explain it.

25          You have before you a defendant who is gainfully

D3LMROSS                       Sentence

1    employed, who is working very, very well towards recovery, who

2    is surrounded by 70 people who came all the way to court to

3    tell you that they are going to stay on his case to remain in

4    recovery.  You have a probation department who has made an

5    extraordinary distinction by itself as to their own view of

6    this defendant, and they have independently concluded that his

7    rehabilitative efforts are sincere and that he is making

8    progress.

9         All I'm asking you, Judge, is not to disturb the

10   present by taking him out of the therapy and recognizing that

11   it's not as if you will never have the ability to correct this

12   sentence, should you conclude that you made a mistake because

13   he has relapsed or because he has done something wrong.

14   Probation is restrictive.  It would require him to work,

15   require him to stay in therapy, require him to continue in all

16   the efforts that he has made to date.

17        I'm asking you, your Honor.  I don't know what else I

18   can say.  And I'm happy to respond to any additional questions.

19   I am hopeful that what your Honor will recognize is a

20   passionate advocacy by someone who has great respect for the

21   Court and also great care for my own credibility in this

22   courthouse.  We have put an enormous amount of time and effort

23   into this case and have concluded in our own mind, and I'm not

24   a witness in these proceedings, but you can tell from our

25   submission that this is a real person who is trying his best to

1  straighten out his life.

2          And when you look at the discussion by Judge Gleason,

3  Judge Sweet, by Judge Weinstein in the Eastern District, by

4  many of the Courts throughout the country who have discussed

5  these very same issues, I think they can all confirm that your

6  Honor has the right to impose a sentence of probation,

7  discretion to do it, and can rely on the facts that we have

8  provided for a good-faith variance from the sentence that would

9  be imposed if the guidelines were mandatory.  We don't have to

10  reach any departure arguments.

11          I would also note that Mr. Nicosia was required to

12  plead guilty to a crime that had a maximum sentence of 20

13  years.

14          THE COURT:  Do they have the same guidelines?  He had

15  no mandatory.

16          MR. BRAFMAN:  I understand that.  But that's a

17  recognition by the government that they were dealing with

18  different people, if you will, your Honor.  Mr. Rosenblum pled

19  guilty to a crime with a maximum of ten years.  And I have not

20  been able to either speak with the probation officer as to why

21  she made the distinction, but I think that's an important

22  distinction.  This is a seasoned probation officer.  This is

23  not a kid.

24          THE COURT:  I am not sure you are right about that.

25  Mr. Cohen can tell me.  I thought that ultimately Mr. Nicosia

D3LMROSS                         Sentence

1      pled to a lesser-included offense.

2             MR. COHEN:  I believe he was charged in a (b)(1)(B)

3      with a five-year mandatory minimum based on the quantity of

4      cocaine, 1001 grams that was seized at the time of his arrest.

5      So I do believe he faced a more serious charge at the outset.

6             Your Honor is completely correct that the guidelines

7      range is identical.  And the substances that Mr. Rosenblum was

8      caught with, Ketamine and methcathinone 4-MEC, do not have

9      mandatory minimums associated with them.

10            Finally, the amount of cocaine to which he pled is

11     approximately, I believe it was -- 230 grams is less than the

12     threshold, the 500-gram threshold for cocaine.  But you are

13     correct, your Honor, that he pled guilty to a lesser included.

14     So the five year was not operative.

15            THE COURT:  In the end there was no mandatory minimum.

16     The guidelines were identical.

17            MR. COHEN:  I should correct what I just said, your

18     Honor.  The mandatory minimum was not applicable due to the

19     safety valve in Mr. Nicosia's case.

20            MR. BRAFMAN:  That's correct.  Mr. Nicosia pled to a

21     mandatory minimum five-year count and then that was avoided as

22     a result of the safety valve.  So then even in the charging

23     instruments the government made the distinction between the

24     defendants.

25            MR. COHEN:  Judge, I just found the letter.  I believe

D3LMROSS                          Sentence

1    it was a (b)(1)(C), after all.

2              THE COURT:  I just don't think that there was a

3    mandatory.

4              MR. COHEN:  I think you are correct.  I found his

5    sentencing, the letter I submitted in Mr. Nicosia's case.  I'm

6    happy to hand it up to your Honor.  It clarifies.

7              THE COURT:  I actually have your letter.

8              MR. COHEN:  It's at the bottom of page 2, your Honor.

9              THE COURT:  In the end there was no mandatory minimum.

10   They both had the same base offense level of 25.  They both had

11   criminal history categories of I.

12             Mr. Cohen, does the government want to add anything at

13   this point?

14             MR. COHEN:  Judge, very briefly, this was a difficult

15   case that the offense is serious, the drugs are serious.  You

16   know, Mr. Rosenblum was selling to Mr. Nicosia, Mr. Nicosia was

17   selling to another individual that your Honor has made

18   reference to earlier.  But at the same time, you have evidence

19   before you, persuasive evidence that the defendant will not

20   recidivate.  Neither one of us know whether that's the case or

21   not, but certainly that is one of the vast distinctions between

22   the two defendants.  I would say that the evidence you have

23   before you that he would not recidivate is consistent with how

24   the cooperation process went.  He cooperated in a timely

25   manner.  My recollection is that he came in for two sessions

first and was informed that the government didn't believe he

could offer substantial assistance.

        Mr. Rosenblum kept telling his lawyer to schedule

additional sessions to discuss other conduct, knowing full well

there were no promises and that the government had told him in

no uncertain terms that a cooperation agreement was not a

possibility.  So in that sense it's not a unique case in that

sense.  That does happen in other cases at times.  But it's not

the common situation of, as soon as a defendant sees that

that's not in the works, just abandoning that strategy

whatsoever.  And so, you know, that to me seems consistent with

his turning over a new leaf, basically, from the start.  That's

all I'd like to say.

        THE COURT:  Did you have some reason to think that

Mr. Nicosia was going to return to criminal conduct after he

was arrested, immediately cooperated with you and then

demonstrated responsible parenting to a really exceptional

degree, I thought?  You were here.  We met his family.  We met

his kids.

        MR. COHEN:  Your Honor, I had serious questions about

Mr. Nicosia's credibility.  And any time you have a defendant

who you believe to be lying, it's a different situation than

defendants who are forthcoming.  Perhaps one of the reasons

that defendants lie is because they think they can get away

with it, and sometimes I'm sure they can.  But that's got a

1    totally different feel than someone who is offering information

2    over and over again and doesn't seem to be at least picking his

3    spots about what to tell the truth about and what not to tell

4    the truth about.

5              THE COURT:  Mr. Rosenblum, you have a chance to speak,

6    if you wish.

7              THE DEFENDANT:  Thanks, your Honor.

8              My name is Bruce Rosenblum.  I'm a recovering addict.

9    I do apologize to my family and my friends for my conduct.  In

10   the past 16 months I have worked hard.  I've gotten support

11   through therapy and through my GA brothers and sisters.  And I

12   have had opportunity to see the bad mistakes that I have made

13   and the bad decisions that I have made.

14             In the past couple of months I've been feeling good

15   about a possible good future and I've been working hard at it.

16   And with the help of people from GA, therapy as well, I hope to

17   have a good future.  I'm asking your Honor to please give me a

18   chance at continuing in my recovery.  Thank you.

19             THE COURT:  Mr. Rosenblum, don't you have the faith in

20   yourself that if you were sentenced to a period in jail that

21   you have really internally turned the corner and that you are

22   never going back to the life of crime and addiction that you

23   have followed for so many years?

24             THE DEFENDANT:  Your Honor, I'm very comfortable in

25   saying that I'm going to work hard and not going back to any of

D3LMROSS                          Sentence

my addictions.  I'm comfortable in saying I will not go back to

my addictions.  I am also comfortable saying when I was within

my addictions, the things that I have done and the way I

reacted, I couldn't imagine.  I came in not even realizing what

I was doing, how I was doing it.

        For the past 18 months, through hearing other people's

stories, through listening, through having the opportunity to

have a therapist one on one, for getting close to my family

again, it's been amazing to me to actually see that life could

go on in a good fashion.

        I can't tell you, your Honor, that putting me in jail

is going to be a good or bad thing for me.  I don't know.  What

I can tell you was, beforehand, I made a lot of mistakes and I

was caught up in my addictions.  And right now I'm doing

everything, and I mean everything, I can to try to have a good

life.

        THE COURT:  But, you know, going forward, in the end

you can only rely on yourself.

        MR. BRAFMAN:  Judge, can I make an observation?

        THE COURT:  Yes.

        MR. BRAFMAN:  There are men and women in this

courtroom who have been in Gamblers Anonymous 45 years

straight, and every one of them will tell you that if they

stopped going they would probably relax back into an addiction

tomorrow.  It is a lifetime of work and effort, and only with

D3LMROSS                          Sentence

1      continued, relentless therapy and support can they cross over

2      that addiction.  This is not an illness that you take

3      antibiotics and five days later you are cured.

4              THE COURT:  I don't think I'm quite that naive.

5              MR. BRAFMAN:  I don't mean that, your Honor.  I'm

6      saying Mr. Rosenblum is now in a place where he is succeeding.

7      And all we are asking is that you not remove him from that

8      place to a place where the odds of him relaxing are greater,

9      much greater than they would be if he were to continue in

10     treatment.

11             And the only reason I mention the people here who have

12     45 years is, it's a statement that is extraordinary when you

13     think about that they are members of GA for 45 years.  This is

14     the future that he has if his therapy isn't interrupted, to

15     continue to deal with that.  It's far more severe a sentence of

16     work that he has to do for the rest of his life.  And I'm

17     asking your Honor to take a chance.

18             And I think the government, very honestly, and I

19     commend Mr. Cohen.  I don't know him, but consistent with the

20     Southern District, he is an honorable man.  He told you what I

21     think is the difference and that is enough, if your Honor wants

22     to vary the sentence imposed on Mr. Nicosia.  He told you very

23     eloquently just a minute ago that this man, who you are about

24     to sentence today, was truthful from the beginning, throughout,

25     and Mr. Nicosia was not, and that's a marked distinction.

D3LMROSS                          Sentence

1          We have all been in cases where when the guidelines

2     were mandatory, a cooperation agreement, if you will, could

3     earn someone nonjail sentence when the guidelines would expose

4     you to 120 months.  And in this case what he told them didn't

5     earn him a cooperation agreement.  Not because he lied, but

6     because he didn't have any information that they needed or that

7     they could use.  There is a big difference between not getting

8     a cooperation agreement because the assistant you are dealing

9     with doesn't trust you or finds you lying or untruthful.  And I

10    think that's a sufficient distinction, if your Honor is

11    inclined to give him the benefit of a more lenient sentence.

12    It certainly helps all of the other arguments that I think are

13    themselves valid and compelling.

14          THE COURT:  Did you want to say anything else?

15          MR. BRAFMAN:  No, Judge.

16          THE DEFENDANT:  Thank you, your Honor.

17          THE COURT:  I am going to take a brief recess.

18          (Recess)

19          THE COURT:  We have talked a lot this afternoon about

20    the codefendants in this case.  And as I've indicated numerous

21    times, I think there are meaningful similarities between them.

22    At the same time, there are distinctions between the

23    defendants, even though personally I find Mr. Nicosia's

24    personal circumstances more compelling.

25          But the reality is that I don't know the defendants as

D3LMROSS                        Sentence

1    well as the prosecutor does and as defense counsel get the

2    opportunity to learn.

3            So I find myself guided by the view of the government

4    that a noncustodial sentence is not objectionable here.  I find

5    sufficient arguments have been presented that cause me some

6    concern that incarcerating the defendant will interfere with

7    the positive path he is on, and I'm heartened by the outpouring

8    of the support in the courtroom on which I must place

9    considerable trust.

10           Accordingly, the defendant is sentenced to time served

11   and placed on supervised release for three years.  There is a

12   special assessment of $100 and all of the mandatory, standard,

13   and special conditions set out at pages 27 and 28 are imposed.

14           Mr. Cohen, are there any open counts to dismiss?

15           MR. COHEN:  There are not, your Honor.

16           THE COURT:  I believe that the defendant waived the

17   right to appeal the sentence.

18           MR. BRAFMAN:  Yes.

19           THE COURT:  Is there anything further?

20           MR. COHEN:  Just for the record, your Honor, our

21   position is that a guidelines sentence is appropriate.  I felt

22   it very important to clarify the difference between the

23   defendants.  But that is merely for the record, your Honor.

24           THE COURT:  After the discussion I don't really know

25   what that means.

D3LMROSS                         Sentence

1          MR. BRAFMAN:  Your Honor, first of all, on behalf of

2     Mr. Rosenblum and his family and all the people in the

3     courtroom and on behalf of myself and my associate, we put a

4     lot of time in this case.  We want to thank you for the trust

5     and the compassion that you've obviously extended in this

6     difficult proceeding.

7          At the risk of being ungracious, could I address an

8     issue on bail.  For the Passover holiday the government has no

9     objection, the defendant be permitted to travel to his

10    brother's home in St. Louis for four days during the holiday

11    and give the government the itinerary.

12         THE COURT:  Sure.

13         MR. BRAFMAN:  Thank you very much, your Honor.

14         THE DEFENDANT:  Your Honor, thank you very much.

15         THE COURT:  We don't clap in a courtroom.  It's not

16    good manners.  Leave silently.  Whatever party you want to

17    have, you can have outside.

18         MR. BRAFMAN:  Thank you, Judge.

19                              o0o

20

21

22

23

24

25